CHARLES L. AND MARILYN L. WRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 14482-89.
United States Tax Court
T.C. Memo 1990-630; 1990 Tax Ct. Memo LEXIS 700; 60 T.C.M. (CCH) 1427; T.C.M. (RIA) 90630; December 13, 1990, Filed *700 Decision will be entered under Rule 155. Charles L. and Marilyn L. Wright, pro se. David H. Peck, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
*702 *2057 MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned pursuant to section 7443A(b) [1] and Rule 180 et seq. Respondent determined deficiencies in petitioners' Federal income taxes of $ 492, $ 4,104, $ 6,073, and $ 2,247, respectively, for tax years 1982, 1984, 1985, and 1986. As a result of concessions by the parties, there are no issues with respect to the 1986 tax year. The sole issue for 1982 is petitioners' entitlement to the carryback of an investment credit from the year 1985, the merits of which will be resolved by the issue involving the years 1984 and 1985. The sole issue for 1984 and 1985 is whether petitioners' farming activities constituted activities not engaged in for profit under section 183. In the event these activities are found to have been engaged in for profit, respondent *703 alternatively contends that (1) some of the expenses claimed were not ordinary and necessary under section 162(a); (2) certain expenses were not substantiated; (3) depreciation claimed on certain assets exceeded the adjusted basis of the assets; (4) depreciation was erroneously claimed on personal-use assets; and (5) the allocation of basis between certain depreciable and nondepreciable assets was improper. FINDINGS OF FACT The parties stipulated to some of the facts which are incorporated herein by reference. Petitioners, husband and wife, resided at Bay City, Texas, at the time their petition was filed. Charles L. Wright (petitioner) was an electrician who was employed full time in this capacity before, during, and after the years in question. He also worked as an electrical consultant during this period. The nature of his work was that he worked temporarily on jobs at various places in the United States. On their 1984 income tax return, petitioner reported wages and salary income of $ 38,083. In 1985, he reported wages and salary income of $ 41,250, and $ 5,093 as an electrical consultant. For 1986, he reported salary and wages of $ 70,046. In 1981, while petitioner *704 was employed and living in Arizona, petitioners purchased 2-1/2 acres of land in the Harquahala Valley region of Arizona. This property was in a development which was promoted for the growth of plum trees as well as for residential use. Owners in the development were afforded the opportunity to have their plum trees, or any other fruit trees an owner might elect to grow, and the produce to be managed and marketed by a cooperative organized and operated by the promoter of the development. The 2-1/2 acres petitioners purchased consisted of a house and some 190 peach trees. Petitioners were not interested in plum trees nor did they avail themselves of the services available from the cooperative for the management and marketing of their peaches. In 1984, petitioners purchased an additional acre adjacent to the 2-1/2 acres. This additional acre had no trees or other improvements. At the time petitioners purchased the 2-1/2 acres in 1981, they were living some 63 miles away but drove to the property two to three times a week to tend to the peach trees. In 1982, they moved on the property after making considerable improvements to the house, constructing other buildings on the property, *705 and purchasing a tractor and related implements. In addition to the peaches, petitioners also raised cattle, ducks, geese, and chickens on the property. Although petitioners expected to plant peach trees on the additional acre purchased in 1984, they never did. Petitioners, however, installed an irrigation system on this portion of the property. In September 1984, petitioner left Arizona to assume a position as a consultant in the construction of a nuclear power plant at St. Francisville, Louisiana. In February 1985, presumably while still employed at this power plant, he moved to Liberty, Mississippi. At this time, Mrs. Wright, who had remained in Arizona, also moved to Liberty. Shortly thereafter, petitioners purchased and moved to a 20.237-acre hay farm at Liberty, retaining their Arizona property. Their purpose in buying the 20.237 acres was to produce Bahia hay, which petitioner felt he could transport to Arizona and sell at $ 9 per bale. The hay operation never materialized. In September 1985, petitioners moved to Georgia, where petitioner took on another consultation *2058 job. They left the Mississippi property to a caretaker in consideration for which the *706 caretaker was given all the hay produced by the farm. In 1986, petitioners sold the property for the amount of the mortgage because they could no longer afford the payments. Petitioners held on to their Arizona property; however, at trial, they testified they were in default on their mortgage, and the creditor holding the mortgage was making every effort to sell the property. The peach trees on the property died in 1985, when the caretaker neglected to irrigate the trees. The record is silent as to what became of the cattle, ducks, geese, and chickens on the Arizona property. For income tax purposes, petitioners did not report their Arizona peach activity until the 1984 tax year. On their 1984 Federal income tax return, they reported no income from the sale of peaches, $ 600 from the sale of cattle having an adjusted basis of $ 674, and $ 15 from the sale of eggs. They reported expenses of $ 17,869 and claimed a net loss of $ 17,810, all reflected on Schedule F of their return. The peach activity was not reported on their 1985 return nor has it since been reported on petitioners' returns. As to the 20.237-acre Mississippi hay farm, petitioners reported this activity on their *707 1985 return. On Schedule F of their return, they reported no income from the farm and claimed expenses of $ 24,884 and a net loss for this amount. In addition, petitioners claimed an investment credit of $ 744 relating to the farm, $ 492 of which was carried back to 1982. Respondent disallowed the $ 17,810 net loss claimed on petitioners' 1984 return for the Arizona peach activity and the 1985 loss of $ 24,884 from the Mississippi hay activity as well as the $ 744 investment credit on the ground that the activities were not engaged in for profit under section 183 and for the other reasons recited earlier in this opinion. OPINION Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The standard for determining whether the expenses of an activity are deductible under either section 162 or section 212(1) or (2) is whether the taxpayer engaged in the activity with *708 the "actual and honest objective of making a profit." Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). The burden of proving such objective is on petitioner. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). In resolving this factual question, greater weight is given to objective facts than to the taxpayer's after-the-fact statements of intent. Section 1.183-(2)(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), *709 affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit. These factors are (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. These factors are not merely a counting device where the number of factors for or against the taxpayer is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. *710 Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. without published opinion 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no one factor is controlling. Section 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, supra at 34. In considering the various applicable factors in this case, the Court finds that petitioners did not engage in their peach and hay farming activities during 1984 and 1985 with an actual and honest objective of making a profit. The hay farm in Mississippi never attained a status as to which the Court might conclude that there was ever a trade or business. Petitioners purchased the farm in 1985, moved away from the farm the same year, produced no hay, left the farm with a caretaker, realized absolutely no revenue *2059 from the property, then sold it in 1986 for the balance due on the mortgage. The Mississippi hay farm, therefore, in 1985, was clearly not an activity engaged in for profit. Although petitioners were more directly involved with their peach activity *711 in Arizona, the record does not support a finding that petitioners had a profit objective with respect to that activity. To begin with, the nature of petitioner's full-time calling was that he worked temporarily at certain locations, then moved to new employment, usually distant from the previous location. There is no showing that any serious effort was made by petitioners to analyze the economic viability of a peach operation in Arizona on the scale of petitioners' operation. Respondent's witness at trial testified that, although peach trees could be grown successfully on a commercial basis in Arizona, the witness knew of no successful commercial operations in the area of petitioners' property. One of the problems at petitioners' location was the necessity of irrigation, and the costs related thereto. Other risks in that part of the country are that the "dormant" period in the winter and early spring frosts can adversely affect production. In fact, petitioners sold no peaches in 1984 because of unfavorable weather. Petitioner acknowledged that, without his full-time employment and consultation income, he could not have financed the two activities in question. Indeed, even *712 with his continued outside employment, petitioner was unable to retain the Mississippi property and later defaulted on the Arizona property. At trial, petitioners presented numerous receipts to substantiate the expenses they incurred with their farm; however, when questioned about several of these expenses, petitioners admitted that some were personal expenses and some related to the house in which they lived. There were other receipts in which petitioners could not identify whether the item was personal or related to the farm. Section 1.183-2(b)(9), Income Tax Regs., provides that "The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Petitioners also argued that, because their Arizona property had appreciated in value, this satisfied section 1.183-2(b)(4), Income Tax Regs. However, petitioner admitted that the property's appreciation in value was attributable to the improvements made to the property rather than the property's potential as a profitable peach farm. This Court has held *713 that, when the property's appreciation in value is independent of the claimed business activity, the gain from sale of the property is not taken into account in evaluating the profits and losses of the activity in question. See Ruben v. Commissioner, T.C. Memo. 1986-260. The Arizona peach activity, therefore, was not engaged in for profit under section 183. Having found that section 183 applies to petitioners' farming activities for 1984 and 1985, the Court finds it unnecessary to pass upon respondent's alternative positions regarding these activities. On their 1984 and 1985 returns, petitioners claimed $ 658 and $ 875, respectively, as interest expenses on their Arizona and Mississippi properties. In the notice of deficiency, respondent allowed $ 43 in interest expense for 1984 as a Schedule A itemized deduction, under section 163(a). No deduction was allowed for 1985. In the stipulation of facts presented at trial, the parties agreed that the amounts claimed as interest by petitioners had in fact been paid. Section 183(b)(1) provides that deductions which are allowable without regard to whether the activity is engaged in for profit shall be allowed. Because *714 interest is an expense which is deductible in any event, the Court finds that petitioners are entitled to interest deductions of $ 658 and $ 875, respectively, for 1984 and 1985 in lieu of the $ 43 allowed in the notice of deficiency for 1984. In all other respects, the adjustments for 1982, 1984, and 1985 are sustained. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩